UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHALMETTE AMUSEMENT, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 22-2647** |
| **HOUSTON CASUALTY COMPANY** | **SECTION: "P" (2)** |

### ORDER AND REASONS

Before the Court is the Motion to Dismiss[1] filed by Defendant Holmes, Murphy and Associates, LLC ("Holmes Murphy"). Plaintiffs oppose the motion,[2] and Holmes Murphy filed a reply memorandum in support of its motion.[3] Having considered the motion, the memoranda and materials submitted in connection with same, and the applicable law, **IT IS ORDERED** that the Motion to Dismiss (R. Doc. 30) is **GRANTED**.

**I.    BACKGROUND**

On August 12, 2022, Plaintiff Chalmette Amusement, Inc. ("Chalmette Amusement") commenced this action against Defendant Houston Casualty Company ("HCC") for claims arising out of an insurance coverage dispute following Hurricane Ida.[4] In the original Complaint, Chalmette Amusement alleged it owned and operated three properties and the contents therein located at: (1) 316 Aycock Street, Arabi, Louisiana; (2) 3901 West Airline Highway, Reserve, Louisiana; and (3) 1173 Airline Highway, Laplace, Louisiana.[5] Chalmette Amusement further alleged that HCC provided an insurance policy, issued to Chalmette Amusement, that was in full force and effect at the time of the hurricane and that covered the properties at issue, the contents

---

[1] R. Doc. 30.
[2] R. Doc. 48.
[3] R. Doc. 49.
[4] R. Doc. 1.
[5] *Id.* at ¶ 2.

therein, as well as loss of rents and business income.[6] Chalmette Amusement alleges it made a claim with HCC for the damages caused by Hurricane Ida but contends HCC has failed to tender adequate insurance proceeds owed under the policy.[7]

On July 17, 2023, a First Supplemental and Amended Complaint was filed, adding new parties and claims to this action and amending certain factual allegations.[8] In relevant part, the Amended Complaint added three additional plaintiffs: TAME, LLC; Riverbend Casino Reserve, LLC; and 3901 Land, LLC (collectively, "the LLC plaintiffs").[9] Together with Chalmette Amusement, these plaintiffs make up part of a group of holdings owned or operated by an individual named Troy Estopinal.[10] According to the Amended Complaint, Mr. Estopinal is the sole member of the three LLCs—TAME, Riverbend Casino Reserve, and 3901 Land.[11] He is also a 50% owner of Chalmette Amusement, and, at all times material hereto, he was the secretary/treasurer of Chalmette Amusement, which made him responsible for procuring insurance coverage for the company.[12]

The Amended Complaint also supplements and amends the paragraph in the original Complaint pertaining to the ownership and operation of the properties at issue.[13] According to the Amended Complaint, Chalmette Amusement does not own or operate any of the properties. Instead, Chalmette Amusement—a business that supplies gaming devices to various bars, restaurants, and truck stop casinos across Louisiana—provided gaming devices and serviced those devices at the three properties at issue.[14] This is the only connection any of the plaintiffs has to the

---

[6] *Id.* at ¶ 3.
[7] *Id.* at ¶¶ 6–15.
[8] R. Doc. 20.
[9] *Id.*
[10] *Id.* at 2, ¶ 2.
[11] *Id.* at 2–3, ¶¶ 2b–2d.
[12] *Id.* at 2, ¶ 2a.
[13] *Id.* at 2–4, ¶¶ 2b–2h.
[14] *Id.* at 2, 4, ¶¶ 2, 2h.

third property (1173 Airline Highway, Laplace, Louisiana), as it is not owned, leased, or operated by any of Mr. Estopinal's other companies. The other two properties, however, are either owned, leased, or operated (or some combination thereof) by one or more of the LLC plaintiffs.

The first property, located at 316 Aycock Street, Arabi, Louisiana, is allegedly owned and operated by TAME, LLC.[15] And as previously mentioned, Chalmette Amusement provided and serviced gaming devices at this property.[16] The second property, located at 3901 West Airline Highway, Reserve, Louisiana, is allegedly owned by 3901 Land, LLC.[17] 3901 Land, LLC leases this property to Riverbend Casino Reserve, LLC; and Riverbend Casino Reserve, LLC subleases this property to Fast Stop Reserve LLC.[18] Fast Stop Reserve LLC is not a party to the lawsuit, and Mr. Estopinal has no ownership interest in Fast Stop Reserve LLC.[19] However, Chalmette Amusement also provided gaming devices to Fast Stop Reserve LLC, and serviced those devices, at this property.[20]

According to the Amended Complaint, Mr. Estopinal, met with agents from Holmes Murphy, an insurance brokerage firm, to review the insurance needs of all the Plaintiffs named herein and to obtain full coverage for business interruption/loss as well as property and content damages due to perils such as hurricanes, storms, hail, wind, and/or water.[21] Plaintiffs further allege that Mr. Estopinal, in connection with these meetings, provided valuations for the contents at all locations and provided business documents as needed for review to ensure full coverage was obtained.[22] Holmes Murphy then secured insurance coverage from Defendant HCC.[23]

---

[15] *Id.* at 2, ¶¶ 2b, 2g.
[16] *Id.* at 4, ¶ 2h.
[17] *Id.* at 3, ¶ 2d.
[18] *Id.* at 3, ¶ 2f.
[19] *Id.* at 3, ¶ 2f.
[20] *Id.* at 4, ¶ 2h.
[21] *Id.* at 4, ¶ 3.
[22] *Id.*
[23] *Id.*

Plaintiffs allege Mr. Estopinal, as representative for all Plaintiffs, understood that the HCC policy covered all of the properties for real property damages, loss of contents, and loss of business for each location as well as the business losses from the interests of Chalmette Amusement in the gaming devices at these locations.[24] In other words, Mr. Estopinal understood the policy as covering the properties and/or businesses of TAME, LLC; River Casino Reserve, LLC; 3901 Land, LLC; and Chalmette Amusement.[25]

According to Plaintiffs, after Hurricane Ida, Mr. Estopinal made a claim with HCC on behalf of the properties and Chalmette Amusement for the damage and losses sustained as a result of the hurricane.[26] HCC inspected the properties in September of 2021, and at that time, no indication was given that any of the properties or their contents were not covered by the HCC insurance policy.[27] And between December of 2021 and February of 2022, HCC made three payments pursuant to the policy.[28] Notably, one of the payments was for property damage at the 3901 West Airline Highway location, i.e., property owned by 3901 Land, LLC.[29] Then, in November of 2022, HCC allegedly indicated to Plaintiffs that HCC was planning to dispute coverage under the policy for any entity not specifically named therein.[30] Plaintiffs allege this was the first indication that an issue existed as to coverage for property loss to the LLC plaintiffs.[31]

The Amended Complaint therefore adds Holmes Murphy as an additional defendant in this action. Plaintiffs contend that in the event the court finds there is no coverage for the LLC plaintiffs, they will suffer a loss in the form of the damages they sustained from the hurricane that

---

[24] *Id.* at 4, ¶ 3b.
[25] *Id.*
[26] *Id.* at 6, ¶ 36f.
[27] *Id.* at 5, ¶ 7.
[28] *Id.* at 6, ¶ 36f.
[29] *Id.* at 6, ¶ 36f(a).
[30] *Id.* at 7, ¶ 36h.
[31] *Id.* at 7, ¶ 36h.

4

are not covered under the policy "due to the negligence of the agents of Holmes Murphy in failing to procure the proper insurance or failing to adequately disclose the entities that the coverage extended to."[32] Plaintiffs further allege the negligence on behalf of Homes Murphy includes the "failure to act prudently in obtaining full coverage for all entities, failure to adequately list all covered entities, failure to listen to and properly advise client as to proper coverage, and other acts of negligence as will be proven at trial."[33]

## II.    LEGAL STANDARD

When presented with a motion to dismiss under Rule 12(b)(6), the Court must assess whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[34] A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[35] Although the Court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff,[36] the Court is not bound to accept as true legal conclusions couched as factual allegations.[37]

## III.    LAW AND ANALYSIS

Homes Murphy argues Plaintiffs' claims are subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs' claims are untimely pursuant to Louisiana Revised Statute § 9:5606 and because Plaintiffs' allegations lack sufficient factual matter to plausibly state a negligence claim against Holmes Murphy.[38] For the reasons set forth below, the Court concludes Plaintiffs' allegations contain sufficient factual matter to plausibly state a negligence claim against

---

[32] *Id.* at 7, ¶ 36i.
[33] *Id.* at 7, ¶ 36j.
[34] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).
[35] *Id.* at 678.
[36] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239, 244 (5th Cir. 2009).
[37] *Iqbal*, 556 U.S. at 678.
[38] R. Doc. 30.

Holmes Murphy but that Plaintiffs' claims are nevertheless perempted by Louisiana Revised Statute § 9:5606.

### A. Whether Plaintiffs Have Plausibly Stated a Claim for Relief Against Holmes Murphy

Under Louisiana law, the duty of an insurance broker is analogous to the duty of an insurance agent, and the Louisiana Supreme Court has held that "an insurance agent owes a duty of 'reasonable diligence' to his customer."[39] "This duty of 'reasonable diligence' is fulfilled when the agent procures the insurance requested."[40] Louisiana courts generally find that an insured has a valid claim against the agent when the insured demonstrates that: (1) "the insurance agent agreed to procure the insurance;" (2) "the agent failed to use 'reasonable diligence' in attempting to procure the insurance and failed to notify the client promptly that the agent did not obtain insurance;" and (3) "the agent acted in such a way that the client could assume he was insured."[41]

In this action, Plaintiffs allege that their representative, Mr. Estopinal, met with agents of Holmes Murphy to obtain insurance for the properties at issue as well as the entities related to these properties, i.e., the LLC plaintiffs and Chalmette Amusement.[42] Plaintiffs further allege that Holmes Murphy then procured the relevant HCC policy,[43] and that Mr. Estopinal understood that this policy, which was issued to Chalmette Amusement, was to cover the losses to the other businesses as well.[44] Plaintiffs also allege that Mr. Estopinal relied on the agents for Holmes Murphy that the policy covered all entities.[45] Plaintiffs thus seek to recover from Holmes Murphy in the event the Court finds there is no coverage for the LLC plaintiffs under the HCC policy on

---

[39] *Isidore Newman Sch. v. J. Everett Eaves, Inc.*, 2009-2161 (La. 7/6/10), 42 So. 3d 352, 356.
[40] *Id.*
[41] *Id.* at 356–57.
[42] R. Doc. 20 at 6, ¶ 36c.
[43] *Id.* at 4, ¶ 3
[44] *Id.* at 6, ¶ 36e.
[45] *Id.*

the basis that the lack of coverage is the result of Homes Murphy's negligence in failing to procure the proper insurance or failing to adequately disclose the entities to which the coverage extended.[46]

Holmes Murphy argues Plaintiffs' have failed to plead a claim that is plausible on its face because Plaintiffs allegations are "conclusory" and do not allege any details or explanations as to how Holmes Murphy was negligent. The Court disagrees. Accepting Plaintiffs' allegations as true and drawing all reasonable inferences in their favor, Plaintiffs have plausibly stated a claim against Holmes Murphy for its negligence as Plaintiffs' alleged insurance broker.

### B. Whether Plaintiffs' Claims against Holmes Murphy are Untimely

The parties agree that Louisiana Revised Statute § 9:5606(A) governs the timeliness of Plaintiffs' claims against Holmes Murphy. This statute states:

> No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. *However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.*[47]

Plaintiffs' Amended Complaint does not contain any allegations regarding when Mr. Estopinal met with the agents of Holmes Murphy, when the policy that should have included the coverage in dispute was procured by Holmes Murphy, or when Plaintiffs received said policy. Nevertheless, Holmes Murphy attaches to its motion the policy in effect at the time of Hurricane Ida as well as the change endorsement from March of 2016, when the last of the properties at issue was added as a covered location under the policy.[48] Despite adding the properties at issue as

---

[46] *Id.* at 5–7, ¶¶ 36b, 36i.
[47] La. Rev. Stat. § 9:5606(A) (emphasis added).
[48] Generally, in deciding a Rule 12(b)(6) motion to dismiss, the Court must limit its review to the contents of the pleadings, including attachments thereto. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635

7

covered locations, the LLC plaintiffs were not added as named insureds under the policy.[49] Chalmette Amusement was, and has remained, the only named insured on the policy.[50]

Holmes Murphy argues Plaintiffs are deemed to know the contents of the policy and, therefore, upon receipt of the policy in 2016, Plaintiffs would have been aware that the policy only included the covered locations and did not list any of the LLC plaintiffs.[51] Holmes Murphy further argues that, at the latest, Plaintiffs would have been aware of this information in February of 2021, when the policy in effect at the time of Hurricane Ida was renewed.[52] Plaintiffs contend they had no knowledge that there was any issue with respect to coverage of these properties until November of 2022, when HCC's counsel notified Plaintiffs' counsel of such.[53] But, for the following reasons, the Court concludes that regardless of when Plaintiffs discovered or should have discovered Holmes Murphy's alleged act, omission, or neglect, Plaintiffs' claims against Holmes Murphy are perempted in accordance with Louisiana Revised Statute § 9:5606(A)'s three-year peremption period, because Plaintiffs have not alleged any act of negligence by Holmes Murphy that the Court could possibly infer to have occurred after March 10, 2016.

Indeed, as previously discussed, Plaintiffs allege that Mr. Estopinal met with agents of Holmes Murphy to obtain insurance for the properties at issue as well as the entities related to these properties and that, as a result of those meetings, Holmes Murphy procured the relevant HCC policy. The endorsement provided by Holmes Murphy reveals that the last time the policy was

---

(5th Cir. 2014). However, the Court may also consider documents attached to a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims. *Id.* Accordingly, because Plaintiffs' Amended Complaint refers to the policy as well as Holmes Murphy's procurement of the coverage at issue, the Court concludes it may consider these attachments. *See* R. Doc. 20. It is also noted that Plaintiffs did not raise any objections to Holmes Murphy's use these documents or to the reliability or accuracy of the documents themselves.

[49] R. Doc. 30-3 at 88.
[50] *Id.* at 4, 88.
[51] R. Doc. 30-1 at 3, 5.
[52] *Id.*
[53] R. Doc. 48 at 9.

revised in this manner was March 10, 2016.[54] Plaintiffs do not allege any other facts upon which the Court could infer that Holmes Murphy committed any subsequent acts of negligence after allegedly failing to procure the proper insurance, which, as stated, occurred on March 10, 2016, at the latest.[55] Thus, because Plaintiffs did not file this action until August 12, 2022, Plaintiffs' claims against Holmes Murphy are perempted by Louisiana Revised Statute § 9:5606(A).

### IV.  CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Holmes Murphy's Motion to Dismiss[56] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' claims against Holmes Murphy are hereby **DISMISSED** with prejudice.

New Orleans, Louisiana, this 18th day of February 2025.

                                          **DARREL JAMES PAPILLION**
                                          **UNITED STATES DISTRICT JUDGE**

---

[54] *Id.* at 88.
[55] *See generally Gomez v. Allstate Ins. Co.*, No. CIV.A. 06-8274, 2007 WL 1166150, at *2 (E.D. La. Apr. 17, 2007) ("In general, renewals of insurance policies do not operate to restart peremption. . . . However, renewals can be the basis of separate torts, if the complained of conduct constitutes separate and distinct acts, which give rise to immediately apparent damages. . . . The inquiry is whether the actions of the insurance agents at the time of renewal can be construed to constitute an act separate from the initial policy procurement.").
[56] R. Doc. 30.